**IN RE: PILGRIM'S PRIDE
CORPORATION et al.,
Debtors.**

**CASE NO. 08–45664–MXM**

United States Bankruptcy Court,
N.D. Texas, Fort Worth Division.

Signed February 15, 2017

Clayton E. Bailey, Bailey Brauer PLLC, Gary T. Holtzzer, Weil, Gotshal & Manges LLP, David William Parham, Akerman LLP, Richard McCoy Roberson, Gardere,Wynne & Sewell, Elliot D. Schuler, Rosa A. Shirley, Baker & McKenzie LLP, Martin A. Sosland, Stephen A. Youngman, Weil, Gotshal & Manges, Dallas, TX, Victoria Vron, Weil Gotshal & Manges LLP, Elisa R. Behar Lemmer, New York, NY, Stephen L. Moll, Gardere Wynne Sewell LLP, Scott D. Ellis, Orin H. Lewis, Houston, TX, John C. Fox, Fox, Wang, & Morgan, P.C., Los Gatos, CA, James J. Frost, James J. Niemeier, McGrath North Mullin & Kratz PC LLO, Omaha, NE, David H. Gilliland, Clark, Thomas, & Winters, Austin, TX, Amy M. Leitch, Akerman LLP, Jacksonville, FL, Jerrell Keith Stanley, Fairchild Price Haley & Smith, LLP, Nacogdoches, TX, for Debtor.

Lisa Laura Lambert Erin Marie Schmidt Office of the United States Trustee Dallas, TX, for United States Trustee.

Jason S. Brookner, Gray Reed & McGraw LLP, Andrews & Kurth, Dallas, TX, Paul N. Silverstein, Andrews Kurth LLP, New York, NY, Jeremy B. Coffey, Brown Rudnick LLP, Boston, MA, William M. Dolan, III, Brown Rudnick LLP, Providence, RI, Michael A. McConnell, Christopher Joshua Osborne, Kelly Hart & Hallman LLP, Fort Worth, TX, for Creditor Committee.

## ORDER GRANTING IN PART AND DENYING IN PART REORGANIZED DEBTOR'S MOTION TO ENFORCE CONFIRMATION ORDER

*Relates to ECF No. 7166*

Mark X. Mullin, United States Bankruptcy Judge

On December 6, 2016, the Court held a hearing on *Reorganized Debtor's Motion to Enforce Confirmation Order* [ECF No. 7166] (the *"Motion to Enforce"*). After considering the Motion to Enforce, the Secretary of Labor's *Response and Supporting Brief* [ECF No. 7174], Reorganized Debtor's *Reply* [ECF No. 7181], the parties' *Stipulation of Facts* [ECF No. 7186], and the other evidence and arguments of counsel, the Court finds and concludes that the Motion to Enforce should be granted in part and denied in part for the reasons set forth below.

### I. JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### II. FACTS

The Court adopts the "STIPULATED FACTS" contained in the parties' Stipulation of Facts, including all exhibits. Capitalized terms in this Order have the same meaning given to them in the Stipulation

of Facts, which was admitted into evidence at the hearing and a copy of which is attached (without exhibits) to this Order as **Exhibit 1**. The Court highlights the timeline of certain of the stipulated facts immediately below.

### A.  Events in PPC's Bankruptcy

PPC filed its Bankruptcy Case on December 1, 2008. On May 18, 2009, the "U.S. Department of Labor, Office of Federal Contract Compliance Programs" filed its Claim in PPC's Bankruptcy Case based on PPC's alleged discriminatory hiring and employment practices at several of PPC's plants.[1] On July 21, 2009, the Court entered its Claims Objections Procedure Order. Subsequently, on November 17, 2009, PPC (and its affiliated debtors) filed the Plan. Thereafter, the Court confirmed PPC's Plan and entered the Confirmation Order. The Plan then went effective on December 28, 2009.[2]

After the Plan went effective and pursuant to the Claims Objections Procedure Order, Reorganized Debtor (and its affiliated reorganized debtors) filed their Objection to the Claim. On September 23, 2011, the Court entered its Order Granting the Objection and disallowed the Claim. Thereafter, the Bankruptcy Case was ultimately closed on September 14, 2015.

### B.  The Department of Labor's Complaints and Lufkin Compliance Investigation

One day after PPC's Bankruptcy Case was closed, the Department of Labor[3]

filed with the OALJ the first of three administrative Complaints against Reorganized Debtor:

(i)  **The Athens Complaint.** The Athens Complaint was filed on September 15, 2015 alleging that PPC's hiring and employment practices at its Athens, Alabama plant from January 1, 2007 to December 31, 2007 violated Executive Order 11246 and its implementing regulations;

(ii)  **The Marshville Complaint.** The Marshville Complaint was filed on October 2, 2015 alleging that PPC's hiring and employment practices at its Marshville, North Carolina plant from July 1, 2007 to June 30, 2008 violated Executive Order 11246 and its implementing regulations; and

(iii)  **The Mount Pleasant Complaint.** The Mount Pleasant Complaint was filed on May 19, 2016 alleging that PPC's hiring and employment practices at its Mount Pleasant, Texas plant from July 20, 2005 to July 20, 2007 violated Executive Order 11246 and its implementing regulations.

Each of the Complaints seeks the following requests for relief:

(i)  financial remedies against Reorganized Debtor in the form of payment of lost wages, interest, front wages, and fringe benefits, including but not limited to, retroactive seniority;

---

1.  The Claim alleged contingent and unliquidated claims against PPC exceeding $1,391,804 based on PPC's alleged discriminatory hiring and employment practices from "July 20, 2005 to Present" at its plants located in Pittsburg, Texas; Mt. Pleasant, Texas; Center, Texas; Natchitoches, Louisiana; Batesville, Arkansas; Lufkin, Texas; and Clinton, Arkansas. *See Stipulation of Facts*, Ex. F [ECF No. 7186].

2.  *See* ECF No. 4533.

3.  Unless otherwise noted, all references in this Order to the "Department of Labor" describe the Department of Labor acting through the OFCCP.

(ii) instatement with Reorganized Debtor of qualified individuals unlawfully denied employment by PPC;

(iii) cancellation of all government contracts with Reorganized Debtor;

(iv) debarment of Reorganized Debtor from future government contracts; and

(v) a permanent injunction against Reorganized Debtor from alleged continuing violations of Executive Order 11246.

As detailed above, the Department of Labor seeks both monetary and equitable claims for relief against Reorganized Debtor. All such claims for relief are based on PPC's hiring and employment practices that occurred prior to PPC's bankruptcy filing.

Meanwhile, the Department of Labor is also investigating PPC's hiring and employment practices at its Lufkin, Texas plant from January 1, 2007 to September 19, 2008 (also prior to PPC's bankruptcy filing) that may have been in violation of Executive Order 11246 and its implementing regulations (the *Lufkin Compliance Investigation*). Although the Department of Labor has not yet filed a formal complaint for the employment practices being investigated in the Lufkin Compliance Investigation, such complaint—if and when filed—likely would seek relief against Reorganized Debtor that is similar to the relief asserted in the Complaints.

## III. SUMMARY OF THE DISPUTE BEFORE THE COURT

Reorganized Debtor believes that the actual and potential claims and relief sought in the Complaints and in the Lufkin Compliance Investigation have been disallowed in PPC's Bankruptcy Case or discharged by PPC's Plan and Confirmation Order. Therefore, Reorganized Debtor filed its Motion to Enforce, seeking an order:

(i) enforcing the Order Granting the Objection;

(ii) enforcing the Plan and Confirmation Order; and

(iii) declaring that the claims and relief sought in the Complaints and potentially sought pursuant to the Lufkin Compliance Investigation are barred and should be dismissed.

In response, the Department of Labor asserts that Reorganized Debtor's Motion to Enforce should be denied because:

(i) the forms of relief sought by OFCCP in the Complaints (and potentially sought based on the Lufkin Compliance Investigation) are equitable forms of relief that do not constitute "claims" that were disallowed pursuant to the Order Granting the Objection or discharged by the Plan and Confirmation Order;

(ii) the Department of Labor's pending Complaints and its Lufkin Compliance Investigation constitute an exercise of the Government's police and regulatory powers not affected by the Order Granting the Objection or by the Plan and Confirmation Order;

(iii) the applicable local offices of the Department of Labor did not receive sufficient notice of PPC's Bankruptcy Case to permit the disallowance of the Claim or discharge of the Department of Labor's unfiled claims;

(iv) the Order Granting the Objection disallowing the Claim is void; and

(v) Reorganized Debtor is equitably estopped from raising its bankruptcy defenses given its failure to timely raise those defenses to the Com-

plaints and Lufkin Compliance Investigation.

## IV. ANALYSIS

First, the Court must determine whether the Department of Labor is asserting against Reorganized Debtor any bankruptcy "claims" through the Complaints or the Lufkin Compliance Investigation. If the Department of Labor is asserting bankruptcy claims against Reorganized Debtor, then the Court must determine whether the Department of Labor had sufficient notice of PPC's Bankruptcy Case and of the Objection to the Claim such that any filed bankruptcy claims were disallowed in PPC's Bankruptcy Case and any unfiled bankruptcy claims were discharged by PPC's Plan and Confirmation Order. Finally, the Court must determine whether Reorganized Debtor is equitably estopped from raising its bankruptcy defenses.[4]

**A. Do the monetary and equitable requests for relief sought by the Department of Labor against Reorganized Debtor constitute "Claims" under the Bankruptcy Code that could have been disallowed or discharged in PPC's Bankruptcy Case?**

The Court first addresses whether the Department of Labor is pursuing bankruptcy "claims" that could have been disallowed or discharged in the Bankruptcy Case. The term "claim" is defined in the Bankruptcy Code as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.[5]

The Supreme Court has found that the Bankruptcy Code definition of "claim" is:

intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11.[6]

In each of the Complaints, the Department of Labor seeks (i) monetary relief against Reorganized Debtor in the form of lost wages, interest, front wages, and other

---

**4.** The Court does not separately address the Department of Labor's argument about police and regulatory powers other than to note that this exception to the § 362 automatic stay does not apply in this case. Although there is some overlap in concepts between the police and regulatory powers referenced in § 362(b)(4) and non-bankruptcy-claim injunctions against continuing harmful conduct (such as ongoing pollution), the automatic stay is simply irrelevant to this dispute. The

proper question is whether any of the forms of relief requested by the Department of Labor are claims that were discharged or disallowed during the Bankruptcy.

**5.** 11 U.S.C. § 101(5).

**6.** *Ohio v. Kovacs*, 469 U.S. 274, 280, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (quoting 124 Cong.Rec. 32393 (1978) (remarks of Rep. Edwards)).

fringe benefits, and (ii) equitable relief against Reorganized Debtor, including instatement of qualified applicants, cancellation of government contracts, and debarment from all future government contracts due to PPC's alleged violations during the applicable pre-petition review periods detailed in each of the Complaints. Finally, the Department of Labor seeks a permanent injunction against Reorganized Debtor from violating Executive Order 11246 and the associated rules and regulations. Thus, the Court must analyze each of the Department of Labor's requests for monetary and equitable relief to determine if each such request for relief constitutes a "claim" that was disallowed in PPC's Bankruptcy Case or discharged by the Plan and Confirmation Order.

The Fifth Circuit has addressed the dischargeability of similar forms of monetary and equitable relief in a chapter 11 bankruptcy case. In *Vega v. Rexene Corp.*,[7] Roxene Corporation fired its employee Raymond Vega after Roxene filed its Chapter 11 bankruptcy case, but before its plan was confirmed. Even though Vega received notice of Rexene's bankruptcy filing, he waited until after Rexene's plan was confirmed to sue reorganized Rexene in federal district court for employment discrimination under Title VII and the Texas Commission on Human Rights Act.

The Fifth Circuit affirmed the district court's grant of summary judgment for Rexene, concluding that Vega's postpetition, preconfirmation monetary damages

and equitable reinstatement claims were discharged by Rexene's confirmed plan. The court rejected Vega's argument that reinstatement was an equitable remedy and thus not a dischargeable "claim." The court distinguished an injunction to prevent ongoing or future harm (such as pollution), which is not dischargeable because the relief cannot be converted into a monetary obligation. Vega's request for reinstatement, on the other hand, was an alternative to monetary front pay under Title VII and was therefore discharged.[8]

■ Based on *Vega*, the economic-loss monetary damages sought in the Complaints (lost wages, interest, front wages, and fringe benefits) all constitute potentially dischargeable claims to the extent they arose from discrimination that occurred prior to confirmation of the Plan. Likewise, under *Vega*, equitable instatement relief arising from pre-confirmation discrimination also constitutes a potentially dischargeable claim because such equitable relief is an alternative to front pay.[9] Finally, although not specifically addressed in *Vega*, the request for cancellation of all government contracts with Reorganized Debtor and for debarment of Reorganized Debtor from future government contracts—to the extent the Department of Labor relies on discrimination that occurred *prior* to PPC's Plan confirmation—also constitute either claims themselves or are simply "backward-looking" efforts to collect discharged claims.[10]

---

7. *Vega v. Rexene Corp.*, 59 F.3d 1242, 1995 WL 413074 (5th Cir. 1995) (per curiam) (unpublished). Unpublished Fifth Circuit opinions issued before January 1, 1996 are precedent. 5th Cir. R. 47.5.3.

8. *Id.* at *3–4.

9. *Accord Rederford v. US Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009) (airline's confirmed Chapter 11 plan discharged former employee's reinstatement claim resulting from alleged prepetition discrimination when employee had notice of bankruptcy; reinstatement was a "claim" because front pay was disfavored, yet nonetheless alternative, remedy to reinstatement).

10. The parties did not explain whether the contracts at issue are pre-bankruptcy contracts, post-petition but preconfirmation contracts, post-confirmation contracts, or some

■ In contrast, the Department of Labor's final request to enjoin Reorganized Debtor from failing to comply with Executive Order 11246 and related regulations in the future constitutes a "forward-looking" effort by the Department of Labor to prevent ongoing or future discrimination. Under *Vega*, such a post confirmation and forward-looking equitable request for relief is not convertible into a monetary obligation and, therefore, does not constitute the type of "claim" that was or could have been disallowed in PPC's Bankruptcy Case or discharged by the Plan and Confirmation Order.[11] Therefore, the Department of Labor is not barred from pursuing such equitable "forward-looking" relief against Reorganized Debtor.

### B. Is the Order Granting the Objection disallowing the Claim enforceable or is it void?

■ The Court must next analyze if the Department of Labor had sufficient notice of PPC's Bankruptcy Case and if the Department of Labor was properly served with relevant notices issued in PPC's Bankruptcy Case. As more fully detailed in the Stipulated Facts, the Bankruptcy Court issued and authorized various forms of notices in PPC's Bankruptcy Case designed to provide good, adequate, and sufficient notice to all creditors and parties-in-interest, including governmental units. Several notices issued in PPC's Bankruptcy Case are relevant to the disputed issues raised by the Department of Labor concerning the disallowance of the Claim.

The first such notice provided to creditors and parties-in-interest in PPC's Bankruptcy Case was the Notice of the claims' Bar Date issued in the case. The Court issued the Notice which, in part, directed all governmental units to file proofs of claim by June 1, 2009. On May 18, 2009, prior to the Bar Date and in compliance with the Notice, the "U.S. Department of Labor, Office of Federal Contract Compliance Programs" filed its Claim in PPC's Bankruptcy Case. Because the Court's local rules did not provide procedures for filing and serving omnibus claims objections,[12] PPC filed its *Motion of the Debtors*

combination of these groups. The Department of Labor focuses on Executive Order 11246, which contains mandatory language for government contracts under which the contractor agrees that it "will not discriminate" and "will take affirmative action" "[d]uring the performance of *this* contract." Executive Order 11246 Sec. 202(1) (emphasis added). If the contractor fails to comply with the nondiscrimination clauses of "this" contract, then "this contract" may be cancelled, terminated or suspended. Executive Order Sec. 202(7). Similarly, the Department of Labor may direct the contracting agency to cancel, terminate, or suspend "any" contract if the contractor fails to comply with the equal-employment opportunity provisions of "the" contract. Executive Order 11246 Sec. 209. The only reference the Court sees to prior contracts is in Section 203(b), which requires bidders or prospective contractors to provide compliance reports for "any previous contract" as part of the bid or negotiation of a new contract. These provisions appear to allow the Department of Labor to seek cancellation of any ongoing contract that was in existence when the discrimination occurred because that would be "this" contract to which the Executive Order refers. If any of the PPC contracts are post-confirmation contracts, neither party explained how the Executive Order or related regulations would allow cancellation or other remedies based on discrimination that occurred during the performance of a *prior* contract. But even if labor law does allow such relief, bankruptcy law prohibits it if the relief is based on a disallowed or discharged claim.

11. The Court takes no position on whether the administrative Complaints—under the labor laws—sufficiently allege ongoing discrimination.

12. Local Bankruptcy Rule 3007–2, effective September 1, 2010, now provides for such procedures.

for Approval of Procedures for Objecting to Claims and for Notifying Claimants of Such Objections (the "**Claims Objections Procedures Motion**").[13] Thereafter, on July 21, 2009, the Court entered its Claims Objections Procedure Order.

Pursuant to the requirements detailed in the Claims Objections Procedure Order, Reorganized Debtor (and its affiliated reorganized debtors) filed their Objection to the Claim and served the Objection and the Notice of Hearing on, in pertinent part, the Designated Notice Recipient listed in the Claim and on the U.S. Attorney for the Northern District of Texas. No response was filed to the Objection. As a result, the Court entered its Order Granting the Objection and disallowed the Claim.

Because the Claim was disallowed by the Order Granting the Objection, Reorganized Debtor asserts that any and all claims and requests for relief sought in the Mount Pleasant Complaint and potentially sought in conjunction with the Lufkin Compliance Investigation were disallowed in PPC's Bankruptcy Case. Therefore, the Department of Labor is barred from asserting such claims against Reorganized Debtor and the Mount Pleasant Complaint and Lufkin Compliance Investigation should be dismissed.

The Department of Labor, on the other hand, alleges that the Order Granting the Objection is void and of no force or effect. Even though PPC served the Objection and the Notice of Hearing in compliance with the Claims Objection Procedures Or-

der, the Department of Labor argues that the Order Granting the Objection is void because Reorganized Debtor did not also serve the Objection and Notice of Hearing on the Attorney General of the United States pursuant to Federal Civil Rule 4. The Court disagrees that Rule 4 service was required.

The Claims Objections Procedures Order governed service of omnibus claims objections filed in PPC's Bankruptcy Case, and that order did not require service pursuant to Federal Civil Rule 4. In the Claims Objections Procedures Motion, PPC noted:

> The Debtors recognize that Claimants may contend that a non-substantive Omnibus Objection is analogous to an answer to a complaint, and therefore that a Claimant is not required to respond. In order to avoid this issue, the Debtors seek entry of an order requiring Claimants to file a response ("Response") to any Objection prior to the hearing date on such Objection.[14]

The language contained in the Claims Objections Procedures Motion likened claim objections to answers (which are served pursuant to Rule 5) and not to complaints (which are served pursuant to Rule 4).[15] The Court approved the Claims Objections Procedures Motion, which detailed the procedures and information PPC was required to include when filing and serving omnibus claims objections. The persons PPC was required to serve concerning such omnibus claims objections in-

---

13. PPC served this motion on the U.S. Attorney for the Northern District of Texas. *See* ECF Nos. 2545 (certificate of service for Claims Objections Procedures Motion), 2546 (certificate of service for notice of hearing).

14. Claims Objections Procedures Motion ¶ 17.

15. *See also In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) ("It has been said that the filing of a proof of claim is tantamount to the filing of a complaint in a civil action, and the trustee's formal objection to the claim, the answer.") (citation omitted).

cluded "each Claimant whose rights are affected by the Omnibus Objection."[16] The Court did not require PPC to serve omnibus claims objections on any other additional parties pursuant to Rule 4. Although Local Bankruptcy Rule 3007–2 was amended after the Claims Objections Procedure Order was entered but before Reorganized Debtor filed its Objection,[17] Reorganized Debtor was entitled to rely on the detailed procedures previously approved by the Court pursuant to the Claims Objections Procedures Order.[18] Therefore, the Court finds and concludes that Reorganized Debtor complied with the Claims Objections Procedures Order, and by doing so, provided the Department of Labor good, adequate, and sufficient notice of the Objection and Notice of Hearing.

The claims currently being asserted by the Department of Labor against Reorganized Debtor in the Mount Pleasant Complaint and potentially asserted pursuant to the Lufkin Compliance Investigation are the same claims that were disallowed by the Order Granting the Objection in PPC's Bankruptcy Case. The Department of Labor is prohibited from continuing its impermissible collateral attack on the Order Granting the Objection. Therefore, the Department of Labor is barred from asserting such previously disallowed claims against Reorganized Debtor, and must dismiss such claims in the Mount Pleasant Complaint and cease pursuing such claims in the Lufkin Compliance Investigation.

## C. Did the Department of Labor have sufficient formal notice or actual knowledge of PPC's Bankruptcy Case sufficient for the Plan and Confirmation Order to discharge all claims that could have been asserted by the Department of Labor?

The Department of Labor's claims currently pending against Reorganized Debtor in the Athens Complaint and Marshville Complaint were not asserted or filed as proofs of claim in PPC's Bankruptcy Case. Even though formal proofs of claim were never filed concerning PPC's Athens, Alabama and Marshville, North Carolina plants, the Department of Labor's Southeastern regional office had initiated compliance investigations concerning PPC's pre-petition hiring and employment practices at or about the time PPC filed its Bankruptcy Case.

Reorganized Debtor contends that the Department of Labor irrefutably had actual notice of PPC's Bankruptcy Case, as evidenced by the Claim that was timely filed. Therefore, the Department of Labor had actual notice of PPC's Bankruptcy Case and should have filed any and all claims that the Department of Labor could have asserted, including any and all claims relating to the pre-petition hiring and employment practices of PPC's Athens, Alabama and Marshville, North Carolina plants. Because the Department of Labor did not file or assert such claims in PPC's Bankruptcy Case, Reorganized Debtor as-

---

16. Claims Objections Procedures Motion ¶¶ 14–16; Claims Objections Procedures Order at 3–5.

17. Under the Court's General Order 2010–03, new local rules were amended effective September 1, 2010, and the new local rules were to be applied to all cases filed on or after that date, *and* to all cases pending in the Court as of that date. As a result, the amended local rules were not in effect when the Court grant-

ed the Claims Objections Procedures Motion, but the amended rules did go into effect prior to the filing of PPC's Objection to the Claim.

18. The Claims Objections Procedures Order modified or suspended any existing or potential future rule regarding service of omnibus claims objections. *See* N.D. Tex. L.B.R. 1001–1(b)(3).

serts that such claims were discharged by the Plan and Confirmation Order.

The Department of Labor states in response that it was not properly served with formal notice of PPC's Bankruptcy Case _and_ that several of its six regional offices,[19] including its Southeastern regional office, did not have formal or actual knowledge of PPC's Bankruptcy Case until long after the Plan went effective. Consequently, the Department of Labor contends that even though its Southwest and Rocky Mountain regional office may have had _actual_ notice of PPC's Bankruptcy Case, such actual notice by the Southwest and Rocky Mountain regional office cannot be imputed to the entire Department of Labor and all of its other regional offices. As a result, the Department of Labor argues that its Southeastern regional office did not have the requisite formal or actual notice of PPC's Bankruptcy Case until long after the Plan went effective. Accordingly, any and all such claims that the Southeastern regional office was investigating (or could have investigated) against PPC during PPC's Bankruptcy Case were not discharged by the Plan or the Confir-

mation Order. Thus, the Department of Labor contends that it should be allowed to continue prosecuting all such claims sought against Reorganized Debtor in the Athens Complaint and Marshville Complaint.

■ At least in the Fifth Circuit, a creditor who receives actual notice of a bankruptcy filing in sufficient time to protect its rights must do so or else risk discharge of its claim.[20] In this case, at least one regional office of the Department of Labor had sufficient notice to timely file a claim in PPC's Bankruptcy Case. The Department of Labor argues, however, that simply because its Southwest and Rocky Mountain regional office admittedly had actual notice of PPC's Bankruptcy Case, such notice cannot be imputed to the entire Department of Labor and all of its other regional or district offices. The facts in this case, however, do not support the Department of Labor's argument.

■ According to the Fifth Circuit:

Even within an individual [United States] agency, given the formidable

---

19. The Department of Labor conducts a variety of investigations through six regional offices, which are the Pacific, Southwest and Rocky Mountain, Midwest, Southeast, Mid–Atlanta, and Northeast regional offices. Each of these regional offices has district offices that report to it. The district offices employ investigators who conduct the investigations. _See Response and Supporting Brief_, at 1 and n. 1 [ECF No. 7174].

20. _See, e.g._, _In re Christopher_, 28 F.3d 512, 518–19 (5th Cir. 1994) (postpetition, preconfirmation claims discharged when claimholders had actual notice of Chapter 11 bankruptcy but did nothing to protect their rights); _Robbins v. Amoco Prod. Co._, 952 F.2d 901, 908 (5th Cir. 1992) (claim discharged when creditor with actual and constructive notice of bankruptcy failed to take action to avoid discharge of claims: "When the holder of a large, unsecured claim receives any notice that its debtor has initiated bankruptcy pro-

ceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.") (citation omitted); _In re Sam_, 894 F.2d 778 (5th Cir. 1990) (notice of automatic stay, received by creditor 18 days before proof of claim deadline, was sufficient to satisfy due process with respect to claims bar date and nondischargeability deadlines); _In re TLI, Inc._, No. 387-35958-HCA-11, 1998 WL 684242, at *4–6 (N.D. Tex. Sept. 25, 1998) (unscheduled creditors with actual notice of bankruptcy bound by plan's discharge injunction notwithstanding debtor's failure to serve them with important notices of bankruptcy-related deadlines); _In re Texas Tamale Co._, 219 B.R. 732, 738–41 (Bankr. S.D. Tex. 1998) (claim discharged when creditor knew about bankruptcy but failed to file motion to allow tardy claim after learning bar date had passed).

infrastructure of many of these government entities, automatic imputation of notice or actual knowledge from one branch office to another is seldom a viable concept. A court should look to the facts in each case to determine whether the information received by a given branch is of such a nature as to put the agency on fair notice of the need to act with reasonable diligence to protect its claim.[21]

In this case, the Department of Labor, through one of its regional offices, timely filed the Claim concerning at least seven of PPC's plants located in three states. In addition, the Department of Labor acknowledged that PPC was the largest chicken processor in the United States, was one of the leading suppliers of chicken products to the United States Department of Agriculture, and was providing chicken products to government installations and offices under a number of government contracts.[22] Under the particular facts of this case, therefore, notice of a bankruptcy filing by such a large chicken processor with extensive supply contacts with the United States government was of such a nature to put the Department of Labor on fair notice of the need to act with reasonable diligence to file and protect any and all PPC-related claims by the Department of Labor that may have arisen or existed in *any* part of the country or that were being investigated by *any* of its other five regional offices.

There is no dispute that the Department of Labor had actual notice of PPC's bankruptcy filing in sufficient time to timely file the Claim regarding at least seven of PPC's plants, including the plants in Athens, Texas and Marshville, Texas. Given the extensive contracts PPC had with the United States government, and the active investigations pending against PPC when it filed its Bankruptcy Case, any and all monetary and equitable claims that were or could have been asserted by the Department of Labor against PPC with respect to any and all active and possible PPC plant investigations were also discharged by the Plan and Confirmation Order. Accordingly, the Department of Labor is barred from pursuing any and all such discharged claims that were or could have been filed in PPC's Bankruptcy Case, including, but not limited to, the monetary and equitable claims and requests for relief asserted in the Athens Complaint, Marshville Complaint, Mount Pleasant Complaint, and Lufkin Compliance Investigation.

### D. Is Reorganized Debtor equitably estopped from raising its bankruptcy arguments now?

■ The Department of Labor finally argues that Reorganized Debtor is equitably estopped from making its bankruptcy disallowance of claims and discharge arguments because it waited too long to assert them in the pending Complaints. Because the Department of Labor failed to prove two of the elements of equitable estoppel, the Court overrules this argument.

■ The four traditional elements of equitable estoppel are (1) the party to be estopped was aware of the facts;[23] (2) the party to be estopped intended his act or omission to be acted upon; (3) the party

---

**21.** *U.S., Small Bus. Admin. v. Bridges,* 894 F.2d 108, 111–12 (5th Cir. 1990).

**22.** Stipulation of Facts Exhibits N ¶¶ 4–5 (Athens Complaint), O ¶¶ 4–5 (Marshville Complaint).

**23.** Reorganized Debtor was aware of the "facts" that PPC had filed Chapter 11 bankruptcy and that it sought a discharge of its debts. DOL Response and Supporting Brief at 21.

asserting estoppel did not have knowledge of the facts; and (4) the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury.[24] The Department of Labor failed to prove elements three and four.

According to the Department of Labor, PPC and now Reorganized Debtor delayed for years before raising the bankruptcy defenses in the pending Complaints. But the Department of Labor knew that PPC filed bankruptcy, and the Department of Labor knew or should have known that PPC sought and obtained a discharge in its Bankruptcy Case. The Department of Labor also knew or should have known that its filed Claim would be reviewed, would be subject to potential objections, and ultimately would be treated in PPC's Bankruptcy Case. The Department of Labor could not reasonably rely on PPC's or Reorganized Debtor's alleged silence to assume that PPC and Reorganized Debtor were abandoning the benefits of PPC's Order Granting the Objection and PPC's discharge under the Plan and Confirmation Order.[25]

The Court reserves the right to make additional findings of fact and conclusions of law. Based upon the Court's findings of fact and conclusions of law, it is **ORDERED** as follows:

1. The Motion to Enforce is **GRANTED** in part and **DENIED** in part as detailed above and below.

2. With respect to the relief sought or to be sought by the Department of Labor in the Athens Complaint, the Marshville Complaint, the Mount Pleasant Complaint, and the Lufkin Compliance Investigation:

a. Economic-loss damages (lost wages, interest, front wages, and fringe benefits) against Reorganized Debtor are disallowed or discharged claims to the extent they arose from discrimination or other prohibited actions of PPC that occurred prior to the effective date of the Plan. The Department of Labor is barred from pursuing those claims further.

b. The requests for instatement relief against Reorganized Debtor are disallowed or discharged claims to the extent they arose from discrimination or other prohibited actions of PPC that occurred prior to the effective date of the Plan. The Department of Labor is barred from pursuing those claims further.

c. The requests for cancellation, termination, and suspension of contracts, and the request for declaration of ineligibility against Reorganized Debtor—to the extent such requests rely on discrimination or other prohibited actions of PPC that occurred prior to the effective date of the

24. *Taylor v. U.S. Treasury Dept.*, 127 F.3d 470, 474 (5th Cir. 1997); *see also Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005) (describing the elements of equitable estoppel as a representation by conduct or word, justifiably relied upon by a party who changed his position to his detriment because of that reliance).

25. *See In re Christopher*, 28 F.3d 512, 520–21 (5th Cir. 1994) (debtor's discharge argument not barred by equitable estoppel or waiver even though debtor litigated discharged claims in state court for two years because his counsel erroneously told him creditors' postpetition claims were not affected by his discharge); *cf. In re Taylor*, 132 F.3d 256, 264 (5th Cir. 1998) ("Taylor did not reasonably rely upon any government representation that the IRS would not seek to enforce its claim because a reasonable debtor should expect the IRS to enforce nondischargeable taxes.").

Plan—are either disallowed or discharged claims themselves or are simply "backward-looking" efforts to collect disallowed or discharged claims. The Department of Labor is barred from pursuing that relief further.

d. To the extent the requests for relief described in subparagraphs (a)-(c) arose from discrimination or other prohibited actions of Reorganized Debtor that occurred after the Plan went effective, such requests for relief are not disallowed or discharged claims, and the Department of Labor is not barred from pursuing any such requests for relief.

e. The Department of Labor's requests to prospectively enjoin Reorganized Debtor from failing to comply with Executive Order 11246 and related regulations are not claims that were disallowed or discharged in PPC's Bankruptcy Case. The Department of Labor may pursue such forward-looking relief against Reorganized Debtor.

### EXHIBIT 1

David W. Parham, SBN: 15459500

**AKERMAN LLP**

2001 Ross Avenue, Suite 2550

Dallas, TX 75201

Telephone: (214) 720-4300

Facsimile: (214) 981-9339

david.parham@akerman.com

*Attorneys for the Reorganized Debtor*

and

Dawn Whalen Theiss, SBN: 24051755

**JOHN R. PARKER**

**UNITED STATES ATTORNEY**

1100 Commerce Street, Third Floor

Dallas, Texas 75242-1699

Telephone: 214-659-8600

Facsimile: 214-767-2916

dawn.theiss@usdoj.gov

*Attorneys for United States of America, Department of Labor*

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF TEXAS

### FORT WORTH DIVISION

In re PILGRIM'S PRIDE CORPORATION, *et al.* [1] Debtors.

Chapter 11

Case No. 08-45664 (DML)

(Jointly Administered)

### STIPULATION OF FACTS FOR HEARING ON MOTION TO REOPEN CASE AND MOTION TO ENFORCE CONFIRMATION ORDER [DOCS. 7165-66]

Pilgrim's Pride Corporation ("PPC," and as reorganized, the "Reorganized Debtor"), and Thomas E. Perez, Secretary of Labor, United States Department of Labor, hereby stipulate to the following facts for the hearing on the Motion to Reopen the Case [Doc. 7165] and Motion to Enforce Confirmation Order [Doc. 7166]. This stipulation is made for the sole purpose of the Motion to Reopen the Case [Doc. 7165]

---

1. The Debtors in these cases are PPC; PFS Distribution Company; PPC Transportation Company; To-Ricos, Ltd.; To-Ricos Distribution, Ltd.; Pilgrim's Pride Corporation of West Virginia, Inc.; and PPC Marketing, Ltd.

and Motion to Enforce Confirmation Order [Doc. 7166] and related bankruptcy proceedings, and is not to be used for any other purpose.

## STIPULATED FACTS

**The Bankruptcy Case.**

1. On December 1, 2008 (the "Petition Date"), PPC and its affiliates (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code, which were jointly administered under Case No. 08–45664 (DML) (the "Bankruptcy Case").

2. The Office of Federal Contract Compliance Programs ("OFCCP"), United States Department of Labor, including its Southwest and Rocky Mountain Regional Office and Southeast Regional Office, had actual knowledge of the Bankruptcy Case on or around the Petition Date.

3. On May 8, 2009, the Court issued the Notice of Deadline for Filing Proofs of Claim (the "Notice"), which directed all governmental units to file a proof of claim by June 1, 2009 (the "Bar Date") based on "Claims (as defined in Section 101(5) of the Bankruptcy Code . . . .)" against the Debtors that arose prior to the Petition Date.[2]

4. The Notice of the Bar Date was served on the Department of Labor, the Office of Solicitor, and the United States Attorney for the Northern District of Texas.[3]

2. A copy of the Notice [Doc. 6453–1] is attached hereto as Exhibit A.

3. *See* Certificate of Service of Notice of Bar Date [1750] at p. 7 (United States Attorney for the Northern District of Texas); 1750–19 at pp. 14, 22 (Department of Labor and Office of Solicitor). A copy of the relevant excerpt of the Certificate of Service is attached hereto as Exhibit B.

5. Debtors also filed a Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) to Establish the Deadline for Filing Proof of Claim and Approving the Form and Manner of Notice Thereof (the "Publication Motion"), wherein the Debtors sought authority to publish the Notice of Bar Date in the national edition of *The Wall Street Journal*, the *USA Today*, *The Mount Pleasant Daily Tribune*, and *El Nuevo Dia* "to notify those creditors who do not receive the Bar Date Notice by mail and other parties in interest of the deadlines for filing Proofs of Claim."[4]

6. The Court granted the Publication Motion and ordered that such publication notice would, among other things, constitute "good, adequate, and sufficient notice" to unknown parties having potential claims against the Debtors' estates.[5]

7. On or around April 16, 2009, the Notice of Bar Date was published in *The Wall Street Journal*, the *USA Today*, *The Mount Pleasant Daily Tribune*, and *El Nuevo Dia*.[6]

8. The Notice provided that if a governmental unit fails to file a proof of claim by the Bar Date, the government unit will be "forever barred, estopped, and enjoined from asserting such Claim (and from filing a Proof of Claim with respect to such Claim) against the Debtors and their estates, and their property will be forever discharged from any and all indebtedness or liability with respect to such Claim."

4. A copy of the Publication Motion [Doc 1103] is attached hereto as Exhibit C.

5. A copy of the Order granting the Publication Motion [Doc. 1352] is attached hereto as Exhibit D.

6. *See* Certificates of Publication of Notice of Bar Date [Docs. 1721; 1723–25], attached hereto as Composite Exhibit E.

9. On or around May 18, 2009, a proof of claim was filed on behalf of the "U.S. Department of Labor, Office of Federal Contract Compliance Programs" (the "Claim").[7]

10. The Claim stated that the name and address where notices should be sent is as follows: "Office of the Solicitor, USDOL, 525 S. Griffin St., # 501, Dallas TX 75202" (the "Designated Notice Recipient").

11. The Claim stated that the "Date [the] debt was incurred" was "July 20, 2005 to Present" and that the "Total Amount of Claim at Time Case [Was] Filed" was $1,391,804.

12. On November 17, 2009, the Debtors filed their Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (As Modified) (the "Plan").[8]

13. The Plan defined "Claim" as having "the meaning ascribed to such term in section 101 of the Bankruptcy Code." (Plan [Doc. 4035] p. 13 § 1.25.)

14. On July 21, 2009, the Court entered an Order establishing procedures for filing omnibus objections pursuant to which the Debtors could object to multiple claims in a single filing (the "Claims Objections Procedure Order").[9]

15. The Claims Objections Procedure Order provided that the Debtors must serve the omnibus objections on "each Claimant whose rights are affected by the Omnibus Objection" and that "[s]uch notice shall constitute good and sufficient notice of the Omnibus Objection and no

additional notice need be provided." (Claims Objections Procedure Order p. 5.)

16. The Claims Objections Procedure Order also provided that if a response to the omnibus objection was filed with respect to a claim, "each such Response will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014." (*Id.* at p. 6.)

17. On December 10, 2009, the Bankruptcy Court entered the Confirmation Order confirming the Plan.[10]

18. The Confirmation Order provided that any "Claim" by a governmental unit "subject to the deadlines established by orders of the Bankruptcy Court for filing proofs of claim" was discharged. (*See* Confirmation Order p. 47 ¶ 40(a); *see also* p. 42 ¶ 35 (providing that pursuant to such discharge, "all holders of Claims ... shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees ... any other or further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date."); ¶ 36 (providing that "all persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against the Debtors, the estates, or any successor thereto").

19. The Plan, as confirmed by the Confirmation Order, provided, in relative part and in bold font, as follows:

---

7. A copy of the Claim is attached hereto as Exhibit F.

8. A copy of the Plan (without attachments) [Doc. 4035] is attached hereto as Exhibit G.

9. A copy of the Claims Objections Procedure Order [Doc. 2723] is attached hereto as Exhibit H.

10. A copy of the Confirmation Order [Doc. 4399], including a copy of the Plan as confirmed, is attached hereto as Exhibit I.

[E]ach holder ... of a Claim and any affiliate of such holder shall be deemed to have forever waived, release and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, and liabilities that arose prior to the Effective Date. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged. Upon the Effective Date, all persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy code, from prosecuting or asserting any discharged Claim against the Debtors, the estates, or any successor thereto.

(Plan [Doc. 4399–2] p. 42, § 10.3, *Discharge of Debtors*.)

20. On August 2, 2011, Debtors timely filed their First Amended One Hundred Thirty–Fifth Omnibus Objection to Claims (Unsupported Claims, Books and Records, and No Liability) (the "Objection") wherein Debtors objected to the Claim.[11]

21. The Objection and the Notice of Hearing on the Objection [Doc. 6768] was served the same day on the United States Attorney for the Northern District of Texas and the Designated Notice Recipient.[12]

22. On September 23, 2011, this Court entered its Order Granting the Objection and disallowed the Claim.[13]

23. The Order Granting the Objection was served on the United States Attorney for the Northern District of Texas and the Designated Notice Recipient.[14]

24. Neither the Objection and the Notice of Hearing on the Objection nor the Order Granting the Objection was served on the Attorney General of the United States.

25. Neither OFCCP nor the Office of the Solicitor of the Department of Labor filed a notice of appearance in the Bankruptcy Case.

**The Subsequent Administrative Actions Filed by OFCCP.**

26. After the Bankruptcy Case closed and starting in September 2015, OFCCP filed three administrative Complaints with the U.S. Department of Labor Office of Administrative Law Judges ("OALJ") against the Reorganized Debtor.

27. The Complaints allege violations of Executive Order 11246 and its implementing regulations.

28. Executive Order 11246 and its implementing regulations, which are enforced by the Department of Labor through OFCCP, provide that covered government contractors and subcontractors shall refrain from discrimination in employment and take affirmative action to ensure that applicants and employees are treated without regard to race, color, religion, sex, national origin, and after the times in question, sexual orientation and gender identity. 41 C.F.R. § 60–1. PPC was a party to a covered federal Government contracts and/or subcontracts and provided chicken products to U.S. government installations and offices.

---

11. A copy of the Objection [Doc. 6767] is attached hereto as Exhibit J.

12. *See* Certificate of Service [Doc. 6773], a copy of which is attached hereto as Exhibit K.

13. A copy of the Order Granting the Objection [Doc. 6808] is attached hereto as Exhibit L.

14. *See* Certificate of Service [Doc. 6812], a copy of which is attached hereto as Exhibit M.

29. Pursuant to 41 C.F.R. § 60-1.20(a), OFCCP may conduct "compliance evaluations" of a covered contractor "to determine if the contractor maintains nondiscriminatory hiring and employment practices."

30. Pursuant to 41 C.F.R. § 60-1.20(a), compliance evaluations may take the form of "compliance reviews," which may involve "a comprehensive analysis and evaluation of the hiring and employment practices of the contractor, the written affirmative action program, and the results of the affirmative action efforts undertaken by the contractor." As part of the review, OFCCP may request document and information and then review the information during a desk audit and go on-site, if warranted, to obtain additional information.

31. In the overwhelming majority of cases, OFCCP finds no violations of Executive Order 11246 and its implementing regulations. In a very small percentage of cases, approximately 1-2%, OFCCP alleges that there have been discrimination violations. If violations of the Executive Order and its implementing regulations are found, OFCCP issues a Notice of Violation, which explains the violations and corrective actions needed to comply with the Executive Order.

32. Though OFCCP conducted dozens of compliance reviews at various PPC plants, the Complaints at issue are based on compliance reviews of three of PPC's plants, one located in Athens, Alabama (the "Athens Complaint"),[15] one located in Mount Pleasant, Texas (the "Mount Pleasant Complaint"),[16] and another located in Marshville, North Carolina (the "Marshville Complaint").[17]

33. More specifically, the compliance review of the plant in Athens, Alabama, began on September 11, 2007, almost fifteen months before the Petition Date (December 1, 2008), and reviewed PPC's hiring and employment practices from January 1, 2007 to December 31, 2007 (the "Athens Review Period"). The Athens plant closed its doors on October 6, 2009, while the Bankruptcy Case was pending. OFCCP first gave PPC notice of its alleged claim on November 8, 2011, when it served its Notice of Violation on PPC.

34. On September 15, 2015, OFCCP filed the Athens Complaint alleging violations of the Executive Order during the Athens Review Period. The Reorganized Debtor's original answer to the Athens Complaint filed on October 30, 2015, did not include an allegation that OFCCP's claims were discharged by the Confirmation Order. However, the Reorganized Debtor filed an Amended Answer on August 22, 2016, alleging that OFCCP's claims were discharged by the Confirmation Order and barred by *res judicata*.[18] On August 9, 2016, the OALJ presiding over the Athens action gave OFCCP until December 31, 2016, to submit a brief "demonstrating that Plaintiff's claims have not been discharged by the Defendant's bankruptcy."[19]

---

15. A copy of the Athens Complaint is attached hereto as Exhibit N.

16. A copy of the Mount Pleasant Complaint is attached hereto as Exhibit O (no answer has been filed yet).

17. A copy of the Marshville Complaint and Answer is attached hereto as Composite Exhibit P.

18. A copy of the original Answer to the Athens Complaint and the Amended Answer is attached hereto as Composite Exhibit Q.

19. *See* Order Regarding Bankruptcy Issues, a copy of which is attached hereto as Exhibit R.

35. The compliance review of the plant in Mount Pleasant, Texas, began on July 20, 2007, almost seventeen months before the Petition Date, and reviewed PPC's hiring and employment practices from July 20, 2005, to July 20, 2007 (the "Mount Pleasant Review Period").

36. The Mount Pleasant investigation was identified in the Claim, and OFCCP estimated that claim to be $754,761.00.

37. On September 17, 2013, OFCCP issued a Notice of Violation to the Mount Pleasant Facility.

38. On November 12, 2014, OFCCP issued a Notice to Show Cause to the Mount Pleasant, Texas facility.

39. On May 19, 2016, OFCCP filed the Mount Pleasant Complaint alleging violations of the Executive Order during the Mount Pleasant Review Period. The Mount Pleasant action is currently stayed to allow this Court to rule on the Motion to Reopen and Motion to Enforce Confirmation Order.[20]

40. The compliance review of the plant in Marshville, North Carolina began on December 17, 2008, approximately two weeks after the Petition Date, and concerned PPC's hiring and employment practices from July 1, 2007 to June 30, 2008 (the "Marshville Review Period"). OFCCP first gave PPC notice of its alleged claim on November 8, 2011, when it served its Notice of Violation on PPC. OFCCP issued a Notice to Show Cause on November 6, 2014. On October 2, 2015, OFCCP filed the Marshville Complaint alleging violations of the Executive Order during the Marshville Review Period. The Marshville action is likewise stayed to permit this court to rule

on the Motion to Reopen and Motion to Enforce Confirmation Order.[21]

41. The three administrative Complaints before the OALJ generally allege the following violations of Executive Order 11246 and its related regulations: (1) race or gender discrimination, (2) the failure to keep certain personnel and employment records, and/or (3) the failure to take "Affirmative Action."

42. In the Complaints, OFCCP generally requests the following types of relief pursuant to 41 C.F.R. § 60–30: (1) instatement of qualified applicants, (2) payment of monetary damages and lost benefits to affected applicants, including the payment of lost wages, interest, front wages, and other fringe benefits such as retroactive seniority, (2) permanent enjoinment from violating the Executive Order and failing to take "Affirmative Action," (3) cancellation (and declaration of ineligibility for extension or modification) of all government contracts, and (4) debarment from entering into future government contracts until the alleged noncompliance is remedied.

43. OFCCP has also conducted a compliance review of a PPC plant located in Lufkin, Texas. OFCCP began the compliance review on September 19, 2008, before the Bankruptcy Case, and reviewed PPC's hiring and employment practices from January 1, 2007 to September 19, 2008. OFCCP has referred the violations purportedly found at the Lufkin, Texas facility in connection with OFCCP's investigation of PPC's prepetition conduct to the Office of the Solicitor for enforcement litigation.

44. The Lufkin investigation was identified in the Claim.

---

**20.** *See* Order Staying Proceedings, a copy of which is attached hereto as Exhibit S.

**21.** *See* Order Staying Case, a copy of which is attached hereto as Exhibit T.

Dated December 2, 2016.

Respectfully submitted,
AKERMAN LLP
David W. Parham, SBN: 15459500
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720–4300
Facsimile: (214) 981–9339
david.parham@akerman.com

and

Amy M. Leitch (FL Bar No. 90112)
(*Pro Hac Vice* )
50 North Laura Street, Suite 3100
Jacksonville, FL 32202–3646
Telephone: (904) 798–3700
Facsimile: (904) 798–3730
amy.leitch@akerman.com

*Counsel for Pilgrim's Pride Corporation*
JOHN R. PARKER United States Attorney
Dawn Whalen Theiss, SBN: 24051755
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242–1699
Telephone: 214–659–8600
Facsimile: 214–767–2916
dawn.theiss@usdoj.gov

*Attorneys for United States of America Department of Labor*

### CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2016, the foregoing document was served on the parties registered to receive electronic notification via the Court's ECF noticing system.

/s/ David W. Parham

David W. Parham